UNITED STATES of America, Plaintiff,

v.

$116,000 IN UNITED STATES CURRENCY, Defendant.

Civ. A. No. 88–5186.

United States District Court,
D. New Jersey.

Oct. 5, 1989.

Samuel A. Alito, Jr., U.S. Atty. by Barbara Miller, U.S. Dept. of Justice, Newark, N.J., for plaintiff.

David A. Ruhnke, Ruhnke & Barrett, West Orange, N.J., for claimant Spagnola.

### OPINION

WOLIN, District Judge.

This is a civil action instituted by the United States of America to condemn and forfeit $116,000 in United States currency alleged to have been used in furtherance of an illegal gambling business in violation of

* Decree omitted for publication.

18 U.S.C. § 1955.[1]  Before the Court is claimant Robert Spagnola's motion for summary judgment or in the alternative for dismissal of the complaint as barred by the Statute of Limitations.  For the reasons set forth herein, the motion will be granted.

## I.  BACKGROUND

On September 23, 1983 federal officers acting pursuant to a search warrant entered the premises at 163 Sunrise Parkway, Mountainside, New Jersey.  During the search the agents seized, among other items, $116,000 in United States currency.

On August 19, 1985, a grand jury for this district returned an indictment charging Robert Spagnola and twenty-six others with having conducted an illegal gambling business in violation of 18 U.S.C. § 1955. Trial of the gambling charges commenced in the fall of 1986.  (*United States v. Accetturo, et al.*, 623 F.Supp. 746 (D.N.J. 1985)).  On August 26, 1988, a jury acquitted the 20 defendants who completed trial.[2]

Within four days of his acquittal, claimant Spagnola filed a motion under Rule 41(e) of the Federal Rules of Criminal Procedure requesting return of the $116,000. The government opposed his motion claiming that tax assessment and forfeiture proceedings were contemplated.  On December 6, 1988, the government filed the instant forfeiture action and on December 12, 1988, the District Court denied claimant's motion for return of the property.

The claimant has now filed a motion to dismiss and/or for summary judgment arguing that the government's forfeiture action is barred under 19 U.S.C. § 1621 because the government was required to file the instant action within five years of seizure of the property.[3]  The government opposes the motion arguing that under the "discovery rule" inherent in section 1621, the government filed its claim for forfeiture less than five years after "discovery" of the alleged gambling offense.  The government also claims that since there is a material dispute as to when the government discovered the offense, the case at bar is not ripe for summary judgment.

## II.  DISCUSSION

The statutory background of this case is straightforward.  Section 1955(d) of Title 18, United States Code, provides in pertinent part:

> Any property, including money used in violation of the provisions of this section may be seized and forfeited to the United States.

This provision for forfeiture incorporates by reference the procedures for forfeiture under the customs laws codified at 19 U.S.C. §§ 1604–1624 (1982 & Supp. V 1987). The two sections of Title 19 relevant to the case at bar provide, in pertinent part:

> Section 1615.  Burden of proof in forfeiture proceedings
>
> In all suits or actions ... brought for the forfeiture of any [property] ... where the property is claimed by any person, the burden of proof shall lie upon such claimant ... provided, [t]hat probable cause shall be first shown for the institution of such suit or action....
>
> Section 1621.  Limitations of actions

---

1.  18 U.S.C. § 1955 (1982) provides in relevant part:

    Whoever conducts, finances, manages, supervises, directs or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

    .  .  .  .  .

    Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States.  All provisions of law relating to the seizure, summary, and judicial procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws ... shall apply to seizures and forfeitures in-

    curred or alleged to have been incurred under the provisions of this section.
    Section 1955 incorporates the procedures for forfeitures under the customs laws codified at 19 U.S.C. §§ 1602–1624 (1982 & Supp. V 1987). 19 U.S.C.A. Section 1621 specifies a five-year statute of limitations.

2.  The cases against several of the original defendants were either severed prior to or during trial or resulted in guilty pleas.

3.  The Court notes that claimant raised the statute of limitations as an affirmative defense in his answer filed on March 21, 1989.

No suit or action to recover any pecuniary penalty or forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered. . . .

Since the government commenced this action for forfeiture of the $116,000 on December 6, 1988—over five years after the property was seized—claimant argues that this delay renders the forfeiture action time-barred under section 1621. Claimant contends that the statute of limitations began running at the moment the currency was seized by the government. Agreeing that section 1621 applies to the case at bar, the government nonetheless argues that the five year limitation period runs *not* from the date of seizure, but from when the government has uncovered the facts which show the nexus between the currency seized and the underlying illegal activity. Thus the parties' dispute is essentially one of statutory construction requiring the Court to interpret the phrase, "when the alleged offense was discovered."

In their briefs and at oral argument, both parties indicated their inability to provide the Court with prior cases interpreting section 1621 in an action for forfeiture under 18 U.S.C. § 1955. Independent research by the Court confirms the dearth of precedent. The Court, however, does not write on an entirely clean slate. Some guidance may be found in forfeiture cases arising under the customs laws which are also subject to the statute of limitations in section 1621.

Although cases involving customs laws are heard by the District Court and the Court of International Trade, both courts have developed consistent jurisprudence regarding the "discovery" of an offense within the meaning of section 1621. The applicable customs cases can be divided into two categories: those arising from the seizure of undeclared goods and those arising from false importation documents or fraudulent entries. When forfeiture is sought after the seizure of undeclared goods, the cause of action accrues at importation. Courts maintain the fiction that the goods have committed a violation of customs laws thus allowing for seizure and forfeiture. It has long been held that "the forfeiture is complete immediately upon importation in avoidance of the customs office." *United States v. One Dark Bay Horse*, 130 F. 240, 241 (D.Vermont 1904); *see also Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–85, 94 S.Ct. 2080, 2090–93, 40 L.Ed.2d 452 (1974) (chronicling the history of in rem forfeitures under the theory that "the thing" is the offender).

Customs cases not involving seizure have been treated differently. In the absence of an obvious violation, like smuggling contraband, courts have held that "knowledge of the falsity of import documents is a means to discovery of a . . . violation and, therefore, causes the statute of limitations to begin to run." *United States v. R.I.T.A. Organics, Inc.*, 487 F.Supp. 75, 78 (N.D.Ill. 1980); *see also United States v. Joan and David Halpern Co. Inc.*, 611 F.Supp. 985 (Ct.Int'l Trade 1985) (the government has five years from "discovery or commission of a violation" to commence suit); *United States v. Gordon*, 7 CIT 350 (Ct.Int'l Trade 1984) (facts alleging discovery of offense must be pleaded).

The foregoing cases demonstrate the courts' adherence to the fundamental canon of statutory instruction that, unless otherwise defined, the language of a statute should be interpreted in the ordinary and usual sense, with the meaning commonly attributed to it. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). It is certainly consistent with the ordinary and usual sense of the language "alleged offense was discovered" to conclude that seizure of property is either contemporaneous evidence of an alleged offense, or the result of prior discovery of an offense. It is also consistent with the common meaning of the language to conclude that in the absence of seizure, an offense is "discovered" when knowledge of the alleged wrong is received. Presumably such a conclusion prompted the district court in *R.I.T.A. Organics* to declare that an offense was "discovered" when a "party discovers or possesses the means to

discover the alleged wrong, whichever occurs first." 487 F.Supp. at 77–8. While this Court is not bound by the decisions of a sister court of coordinate jurisdiction, the foregoing cases comport with this Court's understanding of the ordinary and usual sense of the language at issue.

Apparently aware that the ordinary meaning of the phrase "when the alleged offense was discovered," poses problems for its contention that the offense underlying the instant forfeiture action was not "discovered" at the time the property was seized, the government offers an argument distinguishing *R.I.T.A. Organics* as a decision based solely upon case law involving private fraud actions rather than governmental forfeiture.

In advancing this argument, the government contends that the *R.I.T.A. Organics* court was mistaken in its reliance upon case authority arising from private civil actions because the policies underlying the use of the discovery rule in such actions are inappropriate in governmental actions. This Court disagrees. Although the government correctly asserts that it is restricted by constitutional considerations when filing a forfeiture action, and that those considerations may prevent the government from filing a forfeiture claim during the course of criminal proceedings, the government's argument is misdirected. This claimant is not requesting dismissal because of a denial of due process like the claimant in *United States v. Eight Thousand Eight Hundred & Fifty Dollars*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983), this claimant is requesting dismissal because the government is out of time. This Court is unaware of any legal authority precluding the government from filing a forfeiture claim during a criminal proceeding and requesting a stay until the criminal proceeding is concluded.

The government next asserts that "until the government uncovers the facts which show the nexus between the specific currency seized and the gambling operation, the Section 1955(d) offense is not 'discovered' within the meaning of 19 U.S.C. § 1621." Gov't. Brief at 5. The government has confused the standard for succeeding in a criminal forfeiture action with the standard required to commence a civil forfeiture action.[4] Under 19 U.S.C. § 1615 the government must have probable cause to institute the forfeiture proceedings.[5] The government need not trace the cash to a specific transaction, or actually prove by a preponderance of the evidence a substantial connection to illegal gambling. The government must merely furnish probable cause, i.e. reasonable grounds to believe that a substantial connection exists between the money seized and the gambling operation. *Cf. United States v. 55,518.05 in U.S. Currency*, 728 F.2d 192, 196 (3d Cir.1984) (government's burden under 19 U.S.C. § 1615 is probable cause to believe that the money was intended for illegal use). Furthermore, probable cause may be based wholly on circumstantial evidence and that evidence may include facts learned after the actual seizure of the currency. *United States v. Brock*, 747 F.2d 761 (D.C.Cir.1984).

To accept the government's position that "discovery" under section 1621 does not occur until the government has facts sufficient to show a nexus between the specific currency seized and the gambling operation requires this Court to reach an absurd re-

---

**4.** See Rules 7(c)(2), 31(e), and 32(b)(2) of the Federal Rules of Criminal Procedure; see also *United States v. Sandini*, 816 F.2d 869, 872–76 (1987) (brief review of two kinds of forfeiture actions, including the varying burdens of proof); *United States v. Conner*, 752 F.2d 566, 576–77 (11th Cir.), *cert. denied*, 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985) (RICO forfeiture is in personam, a money judgment against defendant for amount of money received illegally; no tracing of proceeds required; jury verdict rendered on nexus between assets and racketeering enterprise).

**5.** In a forfeiture action, once the government makes this showing, the burden of proof shifts to the claimant to prove by a preponderance of the evidence that the property has an independent innocent source and has not been used illegally. For a thorough discussion see *United States v. One 1950 Buick Sedan*, 231 F.2d 219, 221–23 (3d Cir.1956); see also *United States v. One 1977 Lincoln Mark V Coupe*, 643 F.2d 154 (3d Cir.), *cert. denied*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981).

sult. A fundamental canon of statutory construction is that one part of the statute may not be construed so as to render another part meaningless. *Mountain States Tel. & Tel. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985); *see also United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984) (and cases cited therein). Section 1615 clearly requires the government to demonstrate only probable cause for the institution of forfeiture proceedings. To claim that the government may institute forfeiture proceedings *before* gathering enough facts to "discover" the underlying offense and commence the statute of limitations period is to render section 1615 meaningless.

Furthermore, under the government's definition of "discovered" the statute of limitations for forfeitures would not commence until the government said so, that is, until the government declared that it had uncovered sufficient facts. Such a result would turn legislative judgment on its head. Statutes of limitation are statutes of repose representing "a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979) (citations omitted). Although, as Justice Holmes stated almost seventy years ago, "[m]en must turn square corners when they deal with the Government," *Rock Island, Arkansas & Louisiana Railroad Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920), the government has at least that same duty when it deals with the rights of its citizens. Here, the government secured a search warrant after asserting it had probable cause to believe that claimant would have "on his person, at his residence and in his automobile: U.S. currency ... and other

documents and items—which are fruits, instrumentalities and evidence of violations of 18 U.S.C. §§ 1962(c) and (d), 892–894 and 1955...." After seizing the $116,000 pursuant to that search warrant issued upon probable cause the government cannot now claim that the probable cause held sufficient for seizure is suddenly insufficient to institute forfeiture proceedings and commence the statute of limitations.[6]

### III. CONCLUSION

For all the foregoing reasons, the Court finds the claimant is entitled to return of the amount of currency seized from 163 Sunrise Parkway, Mountainside, New Jersey on September 23, 1983 which the government asserts is subject to forfeiture. The government failed to file its forfeiture action within the statute of limitations as provided in 19 U.S.C. 1621. Claimant's motion to dismiss is granted.

---

**6.** Because the Court finds that the government "discovered" the offense at the time the property was seized and that the statute of limitations commenced at that time, it is unnecessary for

the Court to consider the government's argument concerning the appropriateness of summary judgment.